[Cite as *State v. Turner*, 2017-Ohio-2755.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104490

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BRETT A. TURNER

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-597060-A

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 11, 2017

**ATTORNEYS FOR APPELLANT**

Mark Stanton
Cuyahoga County Public Defender

BY:    Jeffrey Gamso
Assistant Public Defender
Courthouse Square, Suite 200
310 Lakeside Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Owen M. Patton
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Brett A. Turner ("Turner"), appeals his convictions and raises two assignments of error:

> 1. Mr. Turner's right to due process and a fundamentally fair trial was violated when he was convicted of aggravated robbery on insufficient evidence.
>
> 2. Mr. Turner's conviction for felonious assault was against the manifest weight of the evidence.

**{¶2}** We find no merit to the appeal and affirm the trial court's judgment.

### I. Facts and Procedural History

**{¶3}** Turner was charged with two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1) and (3), two counts of felonious assault, in violation of R.C. 2903.13(A)(1) and (2), and one count of having a weapon while under disability, in violation of R.C. 2923.13(A)(3). The aggravated robbery and felonious assault charges included one- and three-year firearm specifications. The charges resulted from an incident in which Steve Baker-Terrell ("Baker-Terrell") was shot outside his girlfriend's house on Cable Avenue in Cleveland. Turner waived his right to a jury on the having a weapon while under disability charge, and the remaining counts were tried to a jury.

**{¶4}** Baker-Terrell testified that on the evening of June 24, 2015, he stopped by the home of his daughter's mother, Jamie Carr ("Carr"), to give her some money for the child's care. During the visit, Carr's brother "Bub" joined Baker-Terrell for a drink in Baker-Terrell's vehicle. Shortly thereafter, Carr approached the vehicle and warned the

men that there were "a couple of cats" coming down the street and that they had better be careful. Baker-Terrell testified that as five armed men approached his vehicle, he took approximately $1,000 in cash from his pocket and placed it in the vehicle along with two cell phones. (Tr. 286, 290.)

{¶5} Per Baker-Terrell's instruction, he and Bub exited the vehicle, and Baker-Terrell offered the men some Hennessy. Baker-Terrell explained:

> The reason why I did that is just to take their mind off whatever they was thinking. If somebody thinking about shooting or killing me, let me offer them something, take his mind off of it. That's the reason I did that. I don't care if I didn't know 'em, that's just what I did to take their mind off of whatever their intention was of doing.

(Tr. 297.)

{¶6} According to Baker-Terrell, the men accepted the Hennessy but nevertheless began shooting within minutes of their arrival. (Tr. 297.) The men shot Baker-Terrell in the calf and fired several shots into his car and into another car that was driving down the street. Baker-Terrell took a few steps and fell to the ground, but managed to flee to a neighbor's backyard.

{¶7} A neighbor was sitting on her boyfriend's front porch directly across the street from Baker-Terrell's car. She was talking to Bub when she suddenly heard arguing and gunfire in the street. The neighbor testified that she only saw one man with Baker-Terrell, and that he had a small handgun. Following the shooting, the neighbor and Bub attended to Baker-Terrell, who appeared to be going into shock. They tied a shirt around his leg to stop the bleeding until an ambulance arrived.

{¶8} The neighbor told police the shooter was a black male, shorter than 5'6," had a short buzzed haircut, and was wearing a white t-shirt and jeans. She knew the gunman was less than 5'6" tall because he was shorter than Baker-Terrell, who is approximately 5'6" tall. When asked whether there was more than one gunman, the neighbor testified: "I didn't see any other — I assume if someone else had a gun they should have been shooting also, but no one else was shooting. No one else had a gun." (Tr. 198.)

{¶9} Police scanned the area, searching for the suspect. Officer Michael Schwebs ("Schwebs") of the Cleveland Police Department testified that he and his partner, Sergeant Stephen Beckner ("Beckner"), responded to the scene and observed a black male, fitting the description the neighbor gave, walking on some nearby railroad tracks. As soon as the suspect saw the police, he ran into a large field of tall grass and disappeared. Schwebs followed the suspect on foot while Beckner drove the police cruiser to the street on the opposite side of the field and waited for the suspect to emerge.

{¶10} After approximately 10 to 20 minutes of waiting, Beckner heard the sound of a fence rattling. He turned his attention to the fence and observed the suspect climb over it and run through a nearby yard. Other officers arrested him moments later.

{¶11} Officer Kyle Freeman ("Freeman") testified that he joined the other officers after the suspect, who was later identified as Turner, was in custody. After his arrest, Turner complained of pain in his wrist. Freeman suspected Turner had been wearing a gun in the waistband of his dark shorts and that it scratched his wrist when he climbed

over the fence. Freeman followed the tracks of flattened tall grass and discovered a Hi-Point pistol lying beside the fence Turner had climbed minutes before.

**{¶12}** Emily Feldenkris ("Feldenkris"), a DNA analyst with the Ohio Bureau of Criminal Investigation ("BCI"), testified that she identified Turner's DNA on the gun's handle. Although Feldenkris was unable to identify the DNA on the gun's trigger, she explained that DNA does not cling to the trigger as it does to the handle due to the trigger's slick surface. Therefore, someone could touch the trigger without leaving any traces of DNA on it. Detective Carla Crowell ("Crowell"), a crime scene detective with the Cleveland Police Department, testified she discovered numerous .380 and 9 mm caliber shell casings at the scene of the shooting. (Tr. 437-438, 440.) Detective Kristen Koeth ("Koeth"), a firearms examiner with the Cleveland Police Department, testified that all seven of the .380 caliber shell casings found at the scene originated from the Hi-Point pistol recovered from the field by the fence. (Tr. 462.)

**{¶13}** Baker-Terrell was taken by EMS to MetroHealth Medical Center. Detective Bruce Garner and another officer visited Baker-Terrell in the hospital and conducted a blind photo-array identification. Baker-Terrell identified Turner as the shooter in photograph number four. Baker-Terrell also signed a "Confidence Statement" indicating that he was 100 percent certain that Turner was the shooter.

**{¶14}** Baker-Terrell testified that he left two cell phones and $1,000 in cash in his vehicle moments before the shooting. When he later retrieved his vehicle from the impound lot, he found that one of his phones and all of his cash were missing. The

missing cell phone was white. Police recovered a white cell phone from Turner's pocket at the time of his arrest. When an officer called Baker-Terrell's phone number, the white cell phone rang.

{¶15} The jury acquitted Turner of one count of aggravated robbery and one count of felonious assault. However, the jury found Turner guilty of one count of aggravated robbery, which required proof that he brandished a firearm while committing a theft offense, and one count of felonious assault, which required proof that Turner caused or attempted to cause serious physical harm with a deadly weapon. The trial court found Turner guilty of having a weapon while under disability.

{¶16} The court merged the firearm specifications but found that the aggravated robbery and felonious assault charges did not merge. The court sentenced Turner to four years on the aggravated robbery and felonious assault charges and three years on the having a weapon while under disability charge. The court ordered the four-year prison terms on the aggravated robbery and felonious assault charges be served concurrently with each other but consecutive to the three years on the firearm specification and the three years on the having weapons while under disability charge for an aggregate ten-year prison term. Turner now appeals his convictions.

## II. Law and Argument

### A. Aggravated Robbery

{¶17} In the first assignment of error, Turner argues his aggravated robbery conviction should be reversed because it is not supported by sufficient evidence.

{¶18} A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

{¶19} Turner was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which states, in relevant part, that

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

{¶20} R.C. 2913.02(A), which defines "theft," states:

> No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

> (1)__Without the consent of the owner or person authorized to give consent;

> (2)__Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

> (3)__By deception;

(4)__By threat;

(5)__By intimidation

**{¶21}** Turner argues there is no evidence that he had any "purpose to deprive" Baker-Terrell of his white cell phone or that he displayed, brandished, indicated that he possessed, or used the gun in relation to his possession of the phone. He contends "there is no evidence at all regarding how Baker-Terrell's cell phone came into Mr. Turner's possession." (Appellant's brief at 5.)

**{¶22}** Although there is no direct evidence as to how Baker-Terrell's phone came into Turner's possession, there is sufficient circumstantial evidence to support the aggravated robbery conviction. "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably_ infer other related or connected facts that naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32, citing *State v. Beynum*, 8th Dist. Cuyahoga No. 69206, 1996 Ohio App. LEXIS 2143 (May 23, 1996).

**{¶23}** In *State v. Lewis*, 8th Dist. Cuyahoga No. 87474, 2006-Ohio-5929, this court held that the "purpose to deprive" element of a robbery offense was established by circumstantial evidence. In that case, the defendant's codefendant pointed a gun at the victim. The victim tried to run, but the defendant grabbed him, put a gun to his side, and questioned him about a break-in at the defendant's apartment. The victim slipped out of

his jacket, which contained his wallet, his cell phone, and $350 cash, and escaped. Both the defendant and his friend testified at trial that it was not their intention to rob the victim.

{¶24} On appeal from the defendant's conviction, this court held there was credible evidence that although the victim left his jacket behind in order to escape, there was competent, credible evidence that the defendant robbed the victim because he took the victim's jacket to his car, and the victim's $350 was never recovered. Although the defendant and his friend testified that they planned to return the victim's jacket, the court found this assertion was not credible in light of the fact that they confronted the victim with a gun.

{¶25} Although there is no evidence that Turner ordered Baker-Terrell to "put his hands up," or that Turner otherwise expressed an intent to rob Baker-Terrell, the neighbor testified that she observed a man fitting Turner's description shoot Baker-Terrell. When police arrested Turner a short while later, he had Baker-Terrell's phone in his possession, and the cash that was with the phone in Baker-Terrell's car was never recovered. Thus, there was sufficient evidence that Turner intended to deprive Baker-Terrell of his cell phone.

{¶26} Turner nevertheless argues there was insufficient evidence to prove beyond a reasonable doubt that he displayed the weapon, brandished it, indicated that he possessed it, or used it. However, as previously stated, the neighbor testified that the shooter matched Turner's description. Additionally, the .380 caliber casings found at

the scene originated from the gun found near the fence Turner climbed while fleeing from police. Moreover, the gun contained Turner's DNA. This evidence is sufficient to establish that Turner fired the gun at the scene where Baker-Terrell was shot. The neighbor testified that when she and Carr investigated the scene within minutes of the shooting to care for Baker-Terrell, the shooter had already gone. Therefore, there is circumstantial evidence that Turner possessed a gun and used it at the time he confiscated Baker-Terrell's phone.

**{¶27}** Furthermore, the Ohio Supreme Court has held that aggravated robbery with a deadly weapon in violation of R.C. 2911.01(A)(1) may be committed where there is evidence that the defendant had such a weapon "on or about his person, or under his control, while fleeing after such offense or attempt." *State v. Warf*, 86 Ohio St.3d 375, 378, 715 N.E.2d 172 (1999); *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, ¶ 32 (holding that the element requiring defendant display, possess, or brandish does not require proof of a mens rea and is subject to strict liability analysis.). Baker-Terrell testified that Turner had a gun in his possession at the time of the shooting. (Tr. 321.)

**{¶28}** Therefore, there was sufficient evidence that Turner possessed a deadly weapon at the time he confiscated Baker-Terrell's cell phone in violation of R.C. 2911.01(A)(1). Accordingly, the first assignment of error is overruled.

### B. Felonious Assault

{¶29} In the second assignment or error, Turner argues his felonious assault conviction is against the manifest weight of the evidence.

{¶30} "A manifest weight challenge * * * questions whether the prosecution met its burden of persuasion." *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶31} Turner was convicted of felonious assault with a deadly weapon, in violation of R.C. 2903.11(A)(2), which states that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶32} Turner asserts it is impossible to know who shot Baker-Terrell because Baker-Terrell testified there were five people with guns, "a lot" of gunshots, and Baker-Terrell was not sure who shot him. He further cites Baker-Terrell's testimony that he identified Turner in the photo array because "[e]veryone was saying that's who it was," but Baker-Terrell did not really know the shooter's identity.

{¶33} However, portions of Baker-Terrell's trial testimony were not credible and other credible evidence indicates that Turner shot Baker-Terrell. Baker-Terrell indicated

he did not want to testify at trial.   (Tr. 256.)   Earlier, the neighbor testified that people from the Cable Avenue neighborhood do not report crimes or identify perpetrators. When asked how people react when police get involved in shooting incidents, she explained:

> Oh, no one, you know, no snitching.   Like people get very upset when people talk to police.   No one on the street usually even talks to the police, they will see something happen and pretend like they didn't see anything at all, but that's like the mentality of the neighborhood.

(Tr. 167.)

{¶34} Throughout his testimony, Baker-Terrell claimed he lacked knowledge of the events because he was "drunk."   (Tr. 267.)   Yet, when asked whether he had already consumed a fifth of Hennessy, he testified, "No, it was a brand new bottle."   (Tr. 292.)   When asked whether he drank a fifth of Hennessy before getting shot, he replied: "No, I was drinking, I had a cup."   Thus, Baker-Terrell's testimony was inconsistent and not credible.

{¶35} Although Baker-Terrell testified in open court that he was not sure who shot him, he identified Turner as the shooter with 100 percent certainty the day after the shooting.   (Tr. 282.)   Although his out-of-court identification of Turner as the shooter was not under oath, it was consistent with the neighbor's description of the shooter as a short, dark-skinned, African American male with a very short, buzzed haircut, wearing a white t-shirt.   She also testified that the suspect fired a small handgun.   When police spotted the suspect fitting that description, he appeared nervous and ran from police. After Turner was arrested, police found Baker-Terrell's phone in his pocket and a .380

caliber handgun along the path Turner ran while fleeing from police. The gun contained Turner's DNA and the casings found at the scene originated from that gun.

{¶36} Therefore, there was competent, credible evidence to support Turner's felonious assault conviction even though Baker-Terrell did not identify Turner as his assailant at trial.

{¶37} The second assignment of error is overruled.

{¶38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR